UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Conservation Law Foundation, Inc., | ) | |
| | ) | Case No. _____ |
| Plaintiff, | ) | |
| | ) | **COMPLAINT FOR** |
| v. | ) | **DECLARATORY AND INJUNCTIVE** |
| | ) | **RELIEF AND CIVIL PENALTIES** |
| Paul Revere Transportation, LLC | ) | |
| and Alternate Concepts, Inc., | ) | |
| | ) | |
| Defendants. | ) | (Clean Air Act, 42 U.S.C. §§ 7401, *et seq.*) |

## <u>INTRODUCTION</u>

1. This is a citizen enforcement suit brought by Plaintiff, Conservation Law Foundation, Inc. ("Plaintiff" or "CLF"), on behalf of its individual members, to redress and prevent Clean Air Act violations that negatively affect the health and lives of Massachusetts residents by repeatedly exposing them to harmful air pollutants.

2. Defendants Paul Revere Transportation, LLC and Alternate Concepts, Inc. ("PRT and Alternate Concepts" or "Defendants") own, operate, and/or manage a fleet of vehicles that travel and are housed in and around the Commonwealth of Massachusetts.

3. Defendants have repeatedly violated, are violating, and continue to violate the Clean Air Act ("CAA" or "Act") and the Massachusetts State Implementation Plan ("SIP"), specifically, the Massachusetts motor vehicle idling limits contained within the federally enforceable Massachusetts SIP.

4. Upon information and belief, Defendants have, on numerous occasions, caused, suffered, allowed, and/or permitted the idling of motor vehicles in excess of the five-minute time period

allowed by 310 C.M.R. § 7.11(1)(b), and not in accordance with any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

5.      Neither PRT nor Alternate Concepts has taken actions sufficient to prevent future violations of the type alleged in this Complaint.

6.      Absent an appropriate order from this Court, Defendants are likely to repeat their violations of the Act as described below. Plaintiff intends this action to encompass post-Complaint violations of the types alleged in the Complaint.

## THE CITIZEN SUIT PROVISION OF THE CLEAN AIR ACT

7.      Congress has declared that the purpose of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

8.      In the "citizen suit" provision of the Act, Congress authorized any person to commence a civil action against any person who is alleged to have violated (if there is evidence that the alleged violation has been repeated) or to be in violation of an emission standard or limitation under the Act. 42 U.S.C. § 7604(a)(1).

9.      The Act's definition of an "emission standard or limitation" includes any standard or limitation established "under any applicable State implementation plan approved by the Administrator." 42 U.S.C. § 7604(f)(4).

10.     The Act directs each state or local air pollution control agency to develop a State Implementation Plan that describes how it will achieve and maintain compliance with National Ambient Air Quality Standards ("NAAQS") set by the United States Environmental Protection Agency ("EPA") to protect human health and the environment. 42 U.S.C. § 7407(a).

2

11.     Standards or limitations established under any EPA-approved SIP are enforceable by citizens under the Act. 42 U.S.C. § 7604(f)(4).

12.     The Commonwealth of Massachusetts has an EPA-approved SIP that includes regulation 310 C.M.R. § 7.11(1)(b) (the "Massachusetts idling regulation"), which prohibits the unnecessary operation of the engine of a motor vehicle while the vehicle is stopped for a period of time in excess of five minutes. 40 C.F.R. § 52; 37 Fed. Reg. 23,085.

13.     In this action, Plaintiff alleges PRT and Alternate Concepts have violated the Massachusetts idling regulation.

14.     The Clean Air Act's citizen suit provision provides the district courts of the United States with jurisdiction to "enforce" emission standards and limitations under the Act and to impose an appropriate civil penalty on the violator of those emissions standards and limitations. 42 U.S.C. § 7604(a).

## **PARTIES**

15.     Plaintiff, Conservation Law Foundation ("CLF"), is a nonprofit, member-supported, regional organization dedicated to protecting New England's environment. It is incorporated under the laws of Massachusetts with a principal place of business at 62 Summer Street, Boston, MA 02110. CLF has over 5,000 members, including 2,787 members in Massachusetts. CLF's mission includes safeguarding the health and quality of life of New England communities facing the adverse effects of air pollution.

16.     CLF's members include individuals who live and recreate near the locations where vehicles owned, operated, and/or managed by PRT and Alternate Concepts idle in excess of five minutes.

17.     The health, well-being, quality of life, and enjoyment of CLF members are harmed by Defendants' violations of the CAA.

18.     "Person" in the CAA is defined to include "corporations." 42 U.S.C. § 7602(e). CLF is a corporation and thus a "person" under the CAA.

19.     Paul Revere Transportation, LLC is a corporation organized under the laws of the Commonwealth of Massachusetts. Its records are maintained at 148 State Street, Suite 1100 C/O Alternate Concepts, Inc., Boston, MA 02109, and it does business within the Commonwealth of Massachusetts.

20.     Alternate Concepts, Inc. is a corporation organized under the laws of the Commonwealth of Massachusetts and is the managing partner of Paul Revere Transportation, LLC. It is headquartered at One Liberty Square, Suite 430, Boston, MA 02109 and does business within the Commonwealth of Massachusetts.

21.     Paul Revere Transportation, LLC is the 17th largest private bus operator in the United States and carries over 15 million passengers each year.

22.     Defendants are all persons within the meaning of Section 302(e) of the CAA, 42 U.S.C. § 7602(e).

**JURISDICTION, VENUE, AND NOTICE**

23.     Subject matter jurisdiction is conferred upon this Court by 42 U.S.C. § 7604(a) (CAA citizen suit jurisdictional provision) and 28 U.S.C. § 1331 (federal question jurisdiction).

24.     Venue lies in this District pursuant to 28 U.S.C. § 1391(e) (federal venue provision) because vehicles owned, operated, managed and/or stored by Defendants were documented idling within this District and because Defendants reside in this District.

4

25.     Plaintiff gave Defendants notice of the violations alleged in this Complaint more than 60 days prior to commencement of this lawsuit by a letter (the "Notice Letter") mailed to Richard J. Daley, Jr., General Manager of Paul Revere Transportation, LLC and to James F. O'Leary, President of Alternate Concepts, Inc. A copy of the Notice Letter is attached as Exhibit 1. The Notice Letter is incorporated by reference herein.

26.     Each Defendant received the Notice Letter. A copy of each return receipt is attached as Exhibit 2.

27.     Copies of the Notice Letter were also mailed to the Administrator of EPA, the Regional Administrator of EPA for Region 1, the Massachusetts Department of Environmental Protection (MassDEP) Commissioner, and the EPA Citizen Suit Coordinator.

28.     Each of the addressees identified in the preceding paragraph received the Notice Letter. A copy of each return receipt is attached as Exhibit 3.

29.     The Notice Letter satisfies the pre-suit notice requirements of the CAA, pursuant to 42 U.S.C. § 7604(b).

30.     Neither MassDEP nor EPA has commenced a civil action against Defendants in court to enforce vehicle anti-idling laws.

## STATUTORY AND REGULATORY BACKGROUND

31. The provisions of the Commonwealth of Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) are part of a federally enforceable SIP approved by EPA under section 110 of the CAA, 42 U.S.C. § 7410. 40 C.F.R. § 52; 37 Fed. Reg. 23,085.

32. The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) provides:

> No person shall cause, suffer, allow, or permit the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes. 310 CMR 17.11 shall not apply to:

5

    1. vehicles being serviced, provided that operation of the engine is essential to the proper repair thereof, or

    2. vehicles engaged in the delivery or acceptance of goods, wares, or merchandise for which engine assisted power is necessary and substitute alternate means cannot be made available, or

    3. vehicles engaged in an operation for which the engine power is necessary for an associated power need other than movement and substitute alternate power means cannot be made available provided that such operation does not cause or contribute to a condition of air pollution.

33. As a federally enforceable SIP under section 113(b) of the Act, 42 U.S.C. § 7413(b), each separate violation of the Massachusetts idling regulation subjects the violator to a penalty of up to $99,681 per day per violation for all CAA violations occurring after November 2, 2015, where penalties are assessed on or after February 6, 2019. 40 C.F.R. §§ 19.2, 19.4.

## FACTUAL BACKGROUND

34. Defendants own, operate, and/or manage shuttle buses across Massachusetts, including the EZRide shuttles, Massport shuttles (including Logan Express and the Logan Airport on-airport shuttles), and the Medical Area Scientific Community Organization (MASCO) shuttles.

35. The vehicles owned, operated, and/or managed by Defendants make regular stops at multiple locations throughout the Commonwealth of Massachusetts.

36. The vehicles owned, operated, and/or managed by Defendants are housed at multiple locations across the Commonwealth of Massachusetts.

37. Defendants operate and/or manage vehicles, including diesel-fueled vehicles, to transport individuals around the Commonwealth of Massachusetts.

38. Diesel-fueled vehicles emit diesel fuel exhaust, which contains fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants.

39.	Fine particulates have been found to impair lung function, aggravate respiratory illnesses such as asthma, bronchitis, and emphysema, and are associated with premature deaths.

40.	Exposure to $NO_x$ can aggravate respiratory diseases, particularly asthma, and lead to respiratory symptoms such as coughing, wheezing, and difficulty breathing.

41.	Longer exposures to elevated concentrations of $NO_x$ may contribute to the development of asthma and potentially increase susceptibility to respiratory infections.

42.	People with asthma, as well as children and the elderly, are generally at greater risk for the health effects of $NO_x$.

43.	Exposure to $SO_2$ can cause respiratory illness, aggravation of asthma, aggravation of existing cardiovascular disease, alteration in pulmonary defenses, and other adverse effects on breathing.

44.	Exposure to high levels of $SO_2$ can cause chronic hypersensitivity to a wide range of respiratory irritant pollutants.

45.	Children, the elderly, and people with asthma, cardiovascular disease, or chronic lung disease (such as bronchitis or emphysema) are particularly susceptible to the adverse effects of $SO_2$.

46.	Benzene is a volatile organic compound ("VOC") and is designated as a Hazardous Air Pollutant under the Act.

47.	Benzene is a known human carcinogen. Benzene exposure can also cause neurological harm in humans and animals.

48.	Exposure to formaldehyde can cause eye, nose, and throat irritation and can harm the nasal cavity.

49.    Other effects seen from exposure to high levels of formaldehyde in humans are coughing, wheezing, chest pains, and bronchitis.

50.    Longer exposures to elevated concentrations of formaldehyde have been associated with respiratory symptoms and eye, nose, and throat irritation.

51.    EPA considers formaldehyde to be a probable human carcinogen (cancer-causing agent).

52.    Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere from the vehicles that they own, operate, and/or manage.

53.    Non-diesel, non-electric buses, including ethanol, propane, and compressed natural gas buses, emit harmful air pollutants.

54.    Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere outside of the Ruggles Orange Line Station located at 1150 Tremont Street, Roxbury, MA 02120 ("Ruggles Orange Line Station").

55.    The William E. Carter School and Madison Park Technical Vocational High School are within a half a mile of the Ruggles Orange Line Station.

56.    Northeastern University, Wentworth Institute of Technology, and the New England Conservatory of Music are within a half a mile of the Ruggles Orange Line Station.

57.    Carter Playground, Forsyth Park, Southwest Corridor Park, Bessie Barnes Park, and the South Bay Harbor Trail are within a half a mile of the Ruggles Orange Line Station.

58.    Saint Cyprians Church, United Emmanuel Holiness Church, Good Shepard Church of God in Christ, and the Islamic Society of Boston Cultural Center are all within a half a mile of the Ruggles Orange Line Station.

59.     According to the 2013-2017 American Community Survey (ACS) data, approximately 23,411 people live within two miles of the Ruggles Orange Line Station.

60.     Ruggles Orange Line Station is located within an Environmental Justice area where the annual median household income is equal to or less than 65 percent of the statewide median and at least 25 percent of residents identify as a race other than white, according to the Environmental Justice layer of the Massachusetts OnLIne ViewER (OLIVER) created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at maps.massgis.state.ma.us/map_ol/ej.php.

61.     Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere at the parking lot owned by Paul Revere Transportation, LLC and located at 59 Reading Street, Boston, MA 02119 (also listed as 33 Island Street, Boston, MA 02119) ("59 Reading Street lot").

62.     Little Sprouts Early Education and Child Care and Associated Early Care and Education are within a half a mile of the 59 Reading Street lot.

63.     Orchard Gardens K-8 School and Mason Samuel W Elementary School are within a half a mile of the 59 Reading Street lot.

64.     Boston Medical Center, Medical Center Hospital, and Boston University Medical Campus are within half a mile of the 59 Reading Street lot.

65.     Orchard Park and Ramsay Park are within half a mile of the 59 Reading Street lot.

66.     According to the 2013-2017 American Community Survey (ACS) data, approximately 21,828 people live within two miles of the 59 Reading Street lot.

67. The 59 Reading Street lot is located within an Environmental Justice area where at least 25 percent of residents identify as a race other than white, according to the Environmental Justice layer of the Massachusetts OnLIne ViewER (OLIVER) created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at maps.massgis.state.ma.us/map_ol/ej.php.

68. Defendants cause, suffer, allow, and/or permit the emission of fine particulates, nitrogen oxides ($NO_x$), sulfur dioxide ($SO_2$), benzene, formaldehyde, and forty other kinds of toxic air contaminants into the atmosphere outside of North Station, located at 135 Causeway Street, Boston, MA 02114 ("North Station").

69. Boston Children's School and Eliot K-8 Innovation Upper School are within half a mile of North Station.

70. Shriner's Hospital for Children and Massachusetts General Hospital are within half a mile of North Station.

71. Saint Joseph Catholic Church, Old North Church, and The Boston Synagogue are within half a mile of North Station.

72. Paul Revere Park, Nashua Street Park, and Lederman Park are within half a mile of North Station.

73. According to the 2013-2017 American Community Survey (ACS) data, approximately 16,471 people live within two miles of North Station.

74. North Station is located within an Environmental Justice area where at least 25 percent of residents identify as a race other than white according to the Environmental Justice layer of the Massachusetts OnLIne ViewER (OLIVER) created in part by the Massachusetts Bureau of Geographic Information (MassGIS) and available at maps.massgis.state.ma.us/map_ol/ej.php.

10

## DEFENDANTS' VIOLATIONS OF THE CLEAN AIR ACT

75.     On the dates listed below in separate paragraphs, an investigator observed vehicles idling

in excess of five minutes for the following amounts of time:

| Paragraph Number | Date | Location of Vehicle (Boston, MA) | Idling Start Time | Idling End Time | Duration of Idling | Excess Idling |
|---|---|---|---|---|---|---|
| 76 | 9/4/2019 | 59 Reading Street Lot | 5:35 AM | 5:43 AM | 8 min | 3 min |
| 77 | 9/4/2019 | 59 Reading Street Lot | 5:48 AM | 6:25 AM | 37 min | 32 min |
| 78 | 9/4/2019 | 59 Reading Street Lot | 5:53 AM | 6:18 AM | 25 min | 20 min |
| 79 | 9/4/2019 | 59 Reading Street Lot | 6:25 AM | 6:37 AM | 12 min | 7 min |
| 80 | 9/4/2019 | 59 Reading Street Lot | 6:25AM | 6:54 AM | 29 min | 24 min |
| 81 | 9/4/2019 | 59 Reading Street Lot | 7:14AM | 7:23 AM | 9 min | 4 min |
| 82 | 9/4/2019 | North Station | 9:18 AM | 9:27 AM | 9 min | 4 min |
| 83 | 9/4/2019 | North Station | 9:37 AM | 9:46 AM | 9 min | 4 min |
| 84 | 9/5/2019 | 59 Reading Street Lot | 5:18 AM | 5:29 AM | 11 min | 6 min |
| 85 | 9/5/2019 | 59 Reading Street Lot | 5:33 AM | 5:41 AM | 8 min | 3 min |
| 86 | 9/5/2019 | 59 Reading Street Lot | 5:45 AM | 5:54 AM | 9 min | 4 min |
| 87 | 9/5/2019 | 59 Reading Street Lot | 6:01 AM | 6:15 AM | 14 min | 9 min |
| 88 | 9/5/2019 | 59 Reading Street Lot | 6:45 AM | 7:08 AM | 23 min | 18 min |
| 89 | 9/5/2019 | 59 Reading Street Lot | 7:18 AM | 7:28 AM | 10 min | 5 min |
| 90 | 9/25/2019 | Ruggles Orange Line Stop | 6:15 AM | 6:21 AM | 6 min | 1 min |
| 91 | 9/25/2019 | Ruggles Orange Line Stop | 6:56 AM | 7:03 AM | 7 min | 2 min |
| 92 | 9/25/2019 | Ruggles Orange Line Stop | 8:31 AM | 8:37 AM | 6 min | 1 min |
| 93 | 9/25/2019 | Ruggles Orange Line Stop | 9:18 AM | 9:25 AM | 7 min | 2 min |
| 94 | 9/25/2019 | Ruggles Orange Line Stop | 9:30 AM | 9:40 AM | 10 min | 5 min |
| 95 | 9/26/2019 | 59 Reading Street Lot | 5:04 AM | 5:13 AM | 9 min | 4 min |
| 96 | 9/26/2019 | 59 Reading Street Lot | 5:15 AM | 5:22 AM | 7 min | 2 min |
| 97 | 9/26/2019 | 59 Reading Street Lot | 5:30 AM | 5:55 AM | 25 min | 20 min |
| 98 | 9/26/2019 | 59 Reading Street Lot | 5:58 AM | 6:07 AM | 9 min | 4 min |
| 99 | 9/26/2019 | 59 Reading Street Lot | 7:19 AM | 7:35 AM | 16 min | 11 min |
| 100 | 9/27/2019 | 59 Reading Street Lot | 4:38 AM | 4:55 AM | 17 min | 12 min |
| 101 | 9/27/2019 | 59 Reading Street Lot | 5:07 AM | 5:14 AM | 7 min | 2 min |
| 102 | 9/27/2019 | 59 Reading Street Lot | 5:22 AM | 5:35 AM | 13 min | 8 min |
| 103 | 9/27/2019 | 59 Reading Street Lot | 5:45 AM | 5:56 AM | 11 min | 6 min |
| 104 | 9/27/2019 | 59 Reading Street Lot | 6:14 AM | 6:21 AM | 7 min | 2 min |
| 105 | 9/27/2019 | 59 Reading Street Lot | 6:23 AM | 6:29 AM | 6 min | 1 min |
| 106 | 10/1/2019 | 59 Reading Street Lot | 5:06 AM | 5:20 AM | 14 min | 9 min |
| 107 | 10/1/2019 | 59 Reading Street Lot | 5:06 AM | 6:19 AM | 73 min | 68 min |

11

| 108 | 10/1/2019 | 59 Reading Street Lot | 5:06 AM | 5:28 AM | 22 min | 17 min |
| 109 | 10/1/2019 | Ruggles Orange Line Stop | 8:16 AM | 9:10 AM | 54 min | 49 min |
| 110 | 10/1/2019 | Ruggles Orange Line Stop | 8:18 AM | 8:25 AM | 7 min | 2 min |
| 111 | 10/1/2019 | Ruggles Orange Line Stop | 8:53 AM | 9:00 AM | 7 min | 2 min |
| 112 | 10/1/2019 | Ruggles Orange Line Stop | 9:10 AM | 9:20 AM | 10 min | 5 min |
| 113 | 10/2/2019 | Ruggles Orange Line Stop | 5:30 AM | 5:40 AM | 10 min | 5 min |
| 114 | 10/2/2019 | Ruggles Orange Line Stop | 6:22 AM | 6:30 AM | 8 min | 3 min |
| 115 | 10/2/2019 | Ruggles Orange Line Stop | 6:32 AM | 8:49 AM | 137 min | 132 min |
| 116 | 10/2/2019 | Ruggles Orange Line Stop | 6:37 AM | 6:47 AM | 10 min | 5 min |
| 117 | 10/2/2019 | Ruggles Orange Line Stop | 6:55 AM | 7:05 AM | 10 min | 5 min |
| 118 | 10/3/2019 | 59 Reading Street Lot | 4:39 AM | 4:51 AM | 12 min | 7 min |
| 119 | 10/3/2019 | 59 Reading Street Lot | 4:57 AM | 5:05 AM | 8 min | 3 min |
| 120 | 10/3/2019 | 59 Reading Street Lot | 5:07 AM | 5:21 AM | 14 min | 9 min |
| 121 | 10/3/2019 | 59 Reading Street Lot | 5:32 AM | 5:46 AM | 14 min | 9 min |
| 122 | 10/3/2019 | 59 Reading Street Lot | 5:32 AM | 5:46 AM | 14 min | 9 min |
| 123 | 10/3/2019 | 59 Reading Street Lot | 6:05 AM | 6:13 AM | 8 min | 3 min |
| 124 | 10/3/2019 | 59 Reading Street Lot | 6:29 AM | 6:37 AM | 8 min | 3 min |
| 125 | 10/3/2019 | 59 Reading Street Lot | 6:40 AM | 6:54 AM | 14 min | 9 min |
| 126 | 10/3/2019 | 59 Reading Street Lot | 7:10 AM | 7:17 AM | 7 min | 2 min |
| 127 | 10/4/2019 | Ruggles Orange Line Stop | 8:09 AM | 8:15 AM | 6 min | 1 min |
| 128 | 10/4/2019 | Ruggles Orange Line Stop | 8:08 AM | 8:22 AM | 14 min | 9 min |
| 129 | 10/4/2019 | Ruggles Orange Line Stop | 8:37 AM | 8:45 AM | 8 min | 3 min |
| 130 | 10/4/2019 | Ruggles Orange Line Stop | 8:53 AM | 8:59 AM | 6 min | 1 min |
| 131 | 10/4/2019 | Ruggles Orange Line Stop | 8:09 AM | 9:00 AM | 51 min | 46 min |
| 132 | 10/8/2019 | 59 Reading Street Lot | 5:06 AM | 5:24 AM | 18 min | 13 min |
| 133 | 10/8/2019 | 59 Reading Street Lot | 5:06 AM | 5:24 AM | 18 min | 13 min |
| 134 | 10/8/2019 | 59 Reading Street Lot | 5:07 AM | 5:15 AM | 8 min | 3 min |
| 135 | 10/8/2019 | 59 Reading Street Lot | 5:28 AM | 5:43 AM | 15 min | 10 min |
| 136 | 10/8/2019 | 59 Reading Street Lot | 5:58 AM | 6:11 AM | 13 min | 8 min |
| 137 | 10/8/2019 | 59 Reading Street Lot | 6:23 AM | 6:32 AM | 9 min | 4 min |
| 138 | 10/8/2019 | Ruggles Orange Line Stop | 4:37 PM | 4:46 PM | 9 min | 4 min |
| 139 | 10/8/2019 | Ruggles Orange Line Stop | 5:50 PM | 6:09 PM | 19 min | 14 min |
| 140 | 10/9/2019 | 59 Reading Street Lot | 5:16 AM | 5:24 AM | 8 min | 3 min |

| 141 | 10/9/2019 | 59 Reading Street Lot | 5:57 AM | 6:03 AM | 6 min | 1 min |
| 142 | 10/9/2019 | Ruggles Orange Line Stop | 8:23 AM | 8:29 AM | 6 min | 1 min |
| 143 | 10/9/2019 | Ruggles Orange Line Stop | 3:47 PM | 3:58 PM | 11 min | 6 min |
| 144 | 10/9/2019 | Ruggles Orange Line Stop | 3:51 PM | 4:00 PM | 9 min | 4 min |
| 145 | 10/9/2019 | Ruggles Orange Line Stop | 4:09 PM | 4:16 PM | 7 min | 2 min |
| 146 | 10/9/2019 | Ruggles Orange Line Stop | 5:54 PM | 6:05 PM | 11 min | 6 min |
| 147 | 10/9/2019 | Ruggles Orange Line Stop | 6:33 PM | 6:40 PM | 7 min | 2 min |
| 148 | 10/10/2019 | 59 Reading Street Lot | 5:12 AM | 5:21 AM | 9 min | 4 min |
| 149 | 10/10/2019 | 59 Reading Street Lot | 5:27 AM | 5:48 AM | 21 min | 16 min |
| 150 | 10/10/2019 | 59 Reading Street Lot | 5:55 AM | 6:02 AM | 7 min | 2 min |
| 151 | 10/10/2019 | 59 Reading Street Lot | 6:02 AM | 6:10 AM | 8 min | 3 min |
| 152 | 10/10/2019 | Ruggles Orange Line Stop | 8:08 AM | 8:14 AM | 6 min | 1 min |
| 153 | 10/10/2019 | Ruggles Orange Line Stop | 3:29 PM | 3:38 PM | 9 min | 4 min |
| 154 | 10/10/2019 | Ruggles Orange Line Stop | 3:39 PM | 3:47 PM | 8 min | 3 min |
| 155 | 10/10/2019 | Ruggles Orange Line Stop | 6:31 PM | 6:41 PM | 10 min | 5 min |
| 156 | 10/11/2019 | 59 Reading Street Lot | 5:17 AM | 5:32 AM | 15 min | 10 min |
| 157 | 10/11/2019 | 59 Reading Street Lot | 5:32 AM | 5:52 AM | 20 min | 15 min |
| 158 | 10/11/2019 | 59 Reading Street Lot | 5:56 AM | 6:17 AM | 21 min | 16 min |
| 159 | 10/11/2019 | 59 Reading Street Lot | 6:07 AM | 6:14 AM | 7 min | 2 min |
| 160 | 10/11/2019 | 59 Reading Street Lot | 6:24 AM | 6:46 AM | 22 min | 17 min |
| 161 | 10/11/2019 | 59 Reading Street Lot | 6:55 AM | 7:02 AM | 7 min | 2 min |
| 162 | 10/11/2019 | Ruggles Orange Line Stop | 8:20 AM | 8:28 AM | 8 min | 3 min |
| 163 | 10/11/2019 | Ruggles Orange Line Stop | 5:27 PM | 5:34 PM | 7 min | 2 min |
| 164 | 10/17/2019 | 59 Reading Street Lot | 5:57 AM | 6:08 AM | 11 min | 6 min |
| 165 | 10/17/2019 | 59 Reading Street Lot | 6:08 AM | 6:19 AM | 11 min | 6 min |
| 166 | 10/17/2019 | 59 Reading Street Lot | 6:39AM | 6:46 AM | 7 min | 2 min |
| 167 | 10/17/2019 | 59 Reading Street Lot | 7:12 AM | 7:25 AM | 13 min | 8 min |
| 168 | 10/18/2019 | 59 Reading Street Lot | 6:10 AM | 6:18 AM | 8 min | 3 min |
| 169 | 10/18/2019 | 59 Reading Street Lot | 6:24 AM | 6:30 AM | 6 min | 1 min |
| 170 | 10/18/2019 | 59 Reading Street Lot | 6:33 AM | 6:43 AM | 10 min | 5 min |
| 171 | 10/18/2019 | 59 Reading Street Lot | 6:52 AM | 7:02 AM | 10 min | 5 min |
| 172 | 11/20/2019 | 59 Reading Street Lot | 6:03 AM | 6:11 AM | 8 min | 3 min |
| 173 | 11/20/2019 | 59 Reading Street Lot | 6:16 AM | 6:23 AM | 7 min | 2 min |
| 174 | 11/20/2019 | 59 Reading Street Lot | 6:16 AM | 6:23 AM | 7 min | 2 min |
| 175 | 11/20/2019 | 59 Reading Street Lot | 6:24 AM | 6:31 AM | 7 min | 2 min |
| 176 | 11/21/2019 | 59 Reading Street Lot | 5:40 AM | 5:48 AM | 8 min | 3 min |
| 177 | 11/21/2019 | 59 Reading Street Lot | 6:00 AM | 6:07 AM | 7 min | 2 min |

| 178 | 11/21/2019 | 59 Reading Street Lot | 6:33 AM | 6:47 AM | 14 min | 9 min |
|-----|------------|------------------------|---------|---------|--------|-------|
| 179 | 11/26/2019 | 59 Reading Street Lot | 5:59 AM | 6:08 AM | 9 min | 4 min |
| 180 | 11/26/2019 | 59 Reading Street Lot | 6:12 AM | 6:19 AM | 7 min | 2 min |
| 181 | 11/26/2019 | 59 Reading Street Lot | 6:31 AM | 6:40 AM | 9 min | 4 min |
| 182 | 11/26/2019 | 59 Reading Street Lot | 7:12 AM | 7:19 AM | 7 min | 2 min |

183.    Plaintiff believes that additional information from other sources not yet publicly available will reveal additional violations.

## **PLAINTIFF AND ITS MEMBERS ARE HARMED BY DEFENDANTS' CLEAN AIR ACT VIOLATIONS**

184.    Plaintiff's members live, rent or own property, study and attend school, use transit, and/or spend time shopping, recreating, and conducting activities near the locations where vehicles owned, operated, and/or managed by PRT and Alternate Concepts were observed idling.

185.    Plaintiff's members reside in and around Boston, Massachusetts.

186.    Plaintiff's members breathe the emissions and air pollutants which Defendants cause, suffer, allow, or permit to be emitted from vehicles they own, operate and/or manage.

187.    Plaintiff's members can observe or smell air pollution coming from vehicles owned, operated and/or managed by Defendants.

188.    Plaintiff's members who live near and spend time at the parks, places of worship, cultural centers, transit stations, hospitals, and/or educational institutions near the locations where vehicles owned, operated, and/or managed by Defendants were observed idling have asthma, experience trouble breathing, and/or suffer from other respiratory symptoms.

189.    Plaintiff's members are reasonably concerned about inhaling carcinogens and other pollutants emitted by vehicles owned, operated, and/or managed by Defendants.

190.    Plaintiff's members want to breathe as little air pollution from vehicles owned, operated, and/or managed by Defendants as possible.

191.    Plaintiff's members are reasonably concerned that the emissions released from vehicles owned operated, and/or managed by Defendants have harmed, continue to harm and threaten, and will harm and threaten their health, well-being, quality of life, and enjoyment, as well as that of their families.

192.    The greater the exposure to particulate matter, nitrogen oxides, sulfur dioxide, benzene, and formaldehyde, and the higher the levels of exposure, the more health and well-being are compromised.

193.    The actual and threatened harm to Plaintiff's members would be redressed by an injunction, civil penalty, and other relief that prevents or deters future violations of the Act by the Defendants and that requires the Defendants to offset their pollution from these violations by reducing their pollution or otherwise remediating harm that has already been caused to Plaintiff's members and their local communities.

## CLAIM FOR RELIEF

**Cause of Action:**
**Violation of Massachusetts Idling Regulation**

194.    Plaintiff incorporates the allegations contained in the above paragraphs as though fully set forth herein.

195.    The Massachusetts idling regulation at 310 C.M.R. § 7.11(1)(b) prohibits "the unnecessary operation of the engine of a motor vehicle while said vehicle is stopped for a foreseeable period of time in excess of five minutes."

196.    A bus, including the shuttle buses at issue here, is defined as a "motor vehicle" under 310 C.M.R. § 7.00.

197.    The Defendants caused, suffered, allowed, and/or permitted motor vehicles to operate unnecessarily while those vehicles were stopped for a foreseeable period of time in excess of five

15

minutes. The operation of the engines of vehicles owned, operated, and/or managed by

Defendants did not occur within any exceptions listed in 310 C.M.R. § 7.11(1)(b)(1), (2), or (3).

198.    Therefore, the Defendants violated 310 C.M.R. § 7.11(1)(b), an applicable SIP

provision, numerous times during September, October, and November of 2019.

199.    Pursuant to section 113(b) of the Act, 42 U.S.C. § 7413(b), and 40 C.F.R. §§ 19.2, 19.4,

Defendants are liable for a civil penalty of up to $99,681 per day for each violation that occurred

after November 2, 2015, where penalties are assessed on or after February 6, 2019.

## <u>RELIEF REQUESTED</u>

200.    Wherefore, Plaintiff respectfully requests that this Court grant the following relief:

(a) Declare Defendants to have violated and to be in violation of 310 C.M.R. § 7.11(1)(b)

for causing, suffering, allowing and/or permitting motor vehicles to operate unnecessarily

while those vehicles were stopped for a foreseeable period of time in excess of five

minutes;

(b) Permanently enjoin the Defendants from causing, suffering, allowing, or permitting

the idling of any motor vehicles in violation of 310 C.M.R. § 7.11(1)(b);

(c) Order Defendants to comply fully and immediately with 310 C.M.R. § 7.11(1)(b);

(d) Order Defendants to pay civil penalties of $99,681 per day for each violation for all

CAA violations that occurred after November 2, 2015 and that are assessed on or after

February 6, 2019;

(e) Order Defendants to take appropriate actions to remedy harm caused by Defendants'

noncompliance with the Clean Air Act;

(f) Award Plaintiff's costs (including reasonable attorney, witness, and consultant fees) as

permitted by Section 304 (d) of the Clean Air Act, 42 U.S.C. § 7406(d); and

(g) Award any such other and further relief as the Court may deem appropriate.

Respectfully submitted this 9th day of January, 2020,

CONSERVATION LAW FOUNDATION, INC.,

By its attorney,

*/s/ Alyssa Rayman-Read*
Alyssa Rayman-Read, Esq.
MA Bar No. 673594
Conservation Law Foundation
62 Summer Street
Boston, MA 02110
(617) 850-1704
arayman-read@clf.org

17